LOGAN v. LOGAN

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-068-CV

HUI CHUAN LOGAN APPELLANT

V.

JAMES SHANNON LOGAN APPELLEE

------------

FROM THE 325TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

This is an appeal from a child custody case in which the trial court granted a new trial based on newly discovered evidence provided by the parties’ daughter.  Appellant Hui Chuan Logan appeals the trial court’s granting of Appellee James Shannon Logan’s motion for new trial, the trial court’s finding of perjury, and the trial court’s judgment that Hui Chuan should pay $10,000 in attorney’s fees for the alleged perjurious testimony.  Alternatively, she challenges the trial court’s judgment that James is not ordered to pay any child support to Hui Chuan despite the fact that Hui Chuan is the joint managing conservator with the right to determine their children’s primary residence.  We affirm.

We initially address James’ reply point in which he argues that Hui Chuan’s entire appeal should be dismissed because the issues were not properly preserved for our consideration.  Specifically, he contends that the notice of appeal is insufficient because it contains a general, non-specific statement that “Hui Chuan desires to appeal this matter,” rather than an indication specifically as to why Hui Chuan desires to appeal.  We disagree because the notice of appeal meets the requirements of rule of appellate procedure 25.1(f).  
See 
Tex. R. App. P.
 25.1(f).  Accordingly, we overrule James’ reply point.

FACTUAL BACKGROUND

On October 22, 2003, the trial court signed a final decree of divorce following a jury trial.  The jury determined that Hui Chuan should be the parent with the right to determine the primary residence of the parties’ two minor sons.  The trial court ordered that James would pay child support.  James filed a motion for new trial based on newly discovered evidence provided by the parties’ daughter, Claudia “Sian” Logan.  The trial court held a hearing, and on November 30, 2003, the trial court signed an order granting James’ motion for new trial as to conservatorship, support, and visitation based on the perjury of Hui Chuan.

Before the case was retried, the parties went to mediation and reached an agreement regarding conservatorship and visitation.  James and Hui Chuan agreed that the trial court would hear evidence and rule on the issue of attorney’s fees and child support.  On November 16, 2004, the trial court signed an order in the suit affecting the parent-child relationship, incorporating the terms of the mediation agreement into the final order, determining that neither party should be required to pay child support, and awarding James a judgment against Hui Chuan for $10,000 of attorney’s fees based upon her perjurious testimony.

MOTION FOR NEW TRIAL

Hui Chuan asserts that the trial court improperly granted James’ motion for new trial because Sian’s unsworn statement that formed the basis for granting James’ motion for new trial did not contain newly discovered evidence, was already used at trial as evidence, was cumulative of evidence admitted at trial, was not material, and would not create a different result had it been admitted at trial.

The law is well-settled that a trial court’s order, rendered during its plenary power, granting a motion for new trial is not reviewable by direct appeal or from a final judgment rendered after further trial court proceedings.  
Wilkins v. Methodist Health Care Syst.
, 160 S.W.3d 559, 563 (Tex. 2005); 
Cummins v. Paisan Constr. Co.
, 682 S.W.2d 235, 235-36 (Tex. 1984); 
Bay Inc. v. Ramos
, 139 S.W.3d 322, 331 (Tex. App.—San Antonio 2004, pet. denied); 
Otis Spunkmeyer, Inc. v. Blakely,
 30 S.W.3d 678, 683 (Tex. App.—Dallas 2000, no pet.); 
Vandehaar v. ALC Fin. Corp.
, 25 S.W.3d 406, 410 (Tex. App.—Beaumont 2000, pet. denied); 
Dillard v. Leonard
, 801 S.W.2d 23, 25 (Tex. App.—San Antonio 1990, no writ); 
see also In re Bayerische Motoren Werke, AG
, 8 S.W.3d 326, 328 (Tex. 2000) (Hecht, J. dissenting); 
Johnson v. Fourth Court of Appeals
, 700 S.W.2d 916, 918 (Tex. 1985) (noting that there are two instances when a Texas appellate court has overturned the trial court’s grant of a new trial, including when the trial court’s order was wholly void and where the trial court specified in the written order that the sole ground for granting the motion was that the jury’s answers to special issues were irreconcilably conflicting).  When a motion for new trial is granted, “the case shall be reinstated upon the docket of the trial court and stand for trial the same as though no trial had been had.”  
Wilkins
, 160 S.W.3d at 563.

Here, the motion for new trial was granted within the trial court’s plenary power, and Hui Chuan is attempting to appeal from a final judgment rendered after further trial court proceedings.  Accordingly, we hold that Hui Chuan is not entitled to review of the trial court’s order granting James’ motion for new trial.  
See Cummins
, 682 S.W.2d at 235-36
.  We overrule Hui Chuan’s first issue.

ATTORNEY’S FEES

In her second issue, Hui Chuan asserts that the trial court erred by awarding $10,000 in attorney’s fees to James for her alleged perjury because James did not plead for attorney’s fees in his motion for new trial and he is not entitled to them under statute or contract.  We note that Hui Chuan does not contest the sufficiency of the evidence regarding the amount of attorney’s fees.  James asserts that Hui Chuan wrongly claims that there was no pleading to support the award of attorney’s fees.

In order to be entitled to a discretionary award of attorney’s fees, the movant must file with the court an affirmative pleading requesting them unless the issue is waived or tried by consent.  
Klaver v. Klaver
, 764 S.W.2d 401, 405 (Tex. App.—Fort Worth 1989, no writ).  Texas follows a “fair notice” standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant.  
Horizon/CMS Healthcare Corp. v. Auld
, 34 S.W.3d 887, 896 (Tex. 2000).

The attorney’s fees were not granted in the order granting James’ motion for new trial; rather, the attorney’s fees were awarded after the second trial in the order in the suit affecting the parent-child relationship following retrial.  At the time of retrial, two live pleadings were on file with the trial court.  James’ petition to modify the parent-child relationship filed subject to the motion for new trial 
and James’ first supplement to pending pleadings concerning the parent-child relationship,
 each of which contained a request for attorney’s fees. 

As Hui Chuan correctly points out, attorney’s fees are not recoverable in Texas unless authorized by statute or by contract between the parties.  
Dallas Cent. Appraisal Dist. v. Seven Inv. Co.
, 835 S.W.2d 75, 77 (Tex. 1992).  The legislature has authorized trial courts to award reasonable attorney’s fees and expenses in suits affecting a parent-child relationship; these attorney’s fees and expenses may be ordered to be paid directly to an attorney. 
 
See
 
Tex. Fam. Code Ann.
 § 106.002 (Vernon Supp. 2006).  An award of attorney’s fees under section 106.002 in a suit affecting the parent-child relationship lies within the trial court’s discretion.  
Bruni v. Bruni
, 924 S.W.2d 366, 368 (Tex. 1996).  James testified that he was requesting the court to award attorney’s fees because the reason he had to go through a second trial was due to Hui Chuan’s perjury.  James pleaded for attorney’s fees, and the trial court was authorized by statute to award attorney’s fees; accordingly, we overrule Hui Chuan’s second issue.

PERJURY

In her third issue, Hui Chuan asserts that there is legally or factually insufficient evidence to support the trial court’s finding that she committed perjury.
(footnote: 2)
 A legal sufficiency challenge may only be sustained when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact.  
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999);
 Robert W. Calvert, 
"No Evidence"
 
and "Insufficient Evidence" Points of Error
, 38 T
EX
. L. R
EV
. 361, 362-63 (1960).  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not.
  
City of Keller v. Wilson
, 168 S.W.3d 802, 827
 (Tex. 2005).

Anything more than a scintilla of evidence is legally sufficient to support the finding.  
Cont’l Coffee Prods. Co. v. Cazarez
, 937 S.W.2d 444, 450 (Tex. 1996); 
Leitch v. Hornsby
, 935 S.W.2d 114, 118 (Tex. 1996).  
When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.  
Kindred v. Con/Chem, Inc.
, 650 S.W.2d 61, 63 (Tex. 1983).  More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact.  
Rocor Int’l, Inc. v. Nat’l Union Fire Ins. Co.
, 77 S.W.3d 253, 262 (Tex. 2002).

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.  
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965).  We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding.  
Mar. Overseas Corp. v. Ellis
, 971 S.W.2d 402, 406-07 (Tex.), 
cert. denied
, 525 U.S. 1017 (1998).

The trial court references Hui Chuan’s alleged perjury in three places in the record.  In the order granting James’ motion for new trial signed on November 20, 2003, the trial court stated, in pertinent part, as follows:

IT IS ORDERED, ADJUDGED AND DECREED that the Motion for New Trial on the issues concerning conservatorship, support and visitation is GRANTED on the basis of the perjury of HUI CHUAN LOGAN.

In a letter ruling dated October 6, 2004, and then in the order in the suit affecting the parent-child relationship signed on November 16, 2004, the trial court stated that it was awarding attorney’s fees to James on the basis of the perjurious testimony of Hui Chuan.  The trial court’s findings of fact and conclusions of law included the following finding:

2. The Court finds that HUI CHUAN LOGAN has been seeing Peter Riley for the better part of eighteen (18) months even though HUI CHUAN LOGAN and Peter Riley have both denied this under oath.

Hui Chuan asserts that the evidence is legally and factually insufficient to support a finding of perjury because she testified that she had spent time with Riley, she had seen him quite often, and he was a regular customer at her restaurant and a friend, although she denied that there was a romantic relationship. Therefore, she asserts that there is legally and factually insufficient evidence to support a finding of perjury that Hui Chuan did see Riley.  Essentially, Hui Chuan is asserting that this court should take a very literal interpretation of the word “seeing.”  The modern interpretation of the word “seeing” involves more than merely face-to-face contact as Hui Chuan suggests.
(footnote: 3) 

Throughout the first trial, Hui Chuan testified that she did not have an improper relationship with Riley.  She denied kissing and holding hands with Riley.  She also testified that she never spent the night with Riley.

At trial, outside the presence of the jury, James testified that he had observed Hui Chuan kissing and holding hands with Riley outside of her restaurant.  At the hearing on the motion for new trial, James introduced into evidence a videotaped statement of Sian, wherein she discussed the nature of Hui Chuan’s relationship with Riley.  According to Sian, Hui Chuan was involved in an adulterous affair with Riley.  She could hear Hui Chuan in the bedroom with Riley, and they slept together in the house.  Sian stated that Hui Chuan was with Riley before the time that her parents separated.

After considering the evidence, we hold that there is more than a scintilla of evidence to support the trial court’s finding of perjury; thus, the evidence is legally sufficient to support the trial court’s finding.  Additionally, after considering all of the evidence, we hold that the evidence supporting the finding of perjury is not so weak, and the evidence to the contrary is not so overwhelming, that the finding of perjury should be set aside and a new trial ordered.  Accordingly, we overrule Hui Chuan’s third issue.

CHILD SUPPORT

In her fourth issue, Hui Chuan asserts that we should reverse the order in the suit affecting the parent-child relationship for the trial court to reconsider the amount of child support ordered to be paid by James to Hui Chuan.

The trial court has broad discretion in setting and modifying child support payments and, absent a clear abuse of that discretion, we will not disturb the trial court’s order on appeal.  
In re P.J.H.
, 25 S.W.3d 402, 405 (Tex. App.—Fort Worth 2000, no pet.).  To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles, in other words, whether the act was arbitrary or unreasonable.  
Downer v. Aquamarine Operators, Inc.
, 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986).  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  
Id.

The family code provides that the amount of child support payments set by the child support guidelines is presumed to be in the best interest of the child.  
Tex. Fam. Code Ann.
 § 154.122 (Vernon 2002).  However, if the evidence rebuts the presumption that application of the guidelines would be in the best interest of the child and justifies variance from the guidelines, the court may order periodic child support payments in an amount other than that established by the guidelines.  
Id.
 § 154.123.  Family code section 154.123(b) lists seventeen factors that the trial court may consider in varying from the guidelines, including, among other things, the age and needs of the child, the ability of the parents to contribute to the support of the child, the financial resources available for support of the child, and whether either party has managing conservatorship or actual physical custody of the child.  
See
 
id.
 § 154.123(b). 

Here, the trial court made a finding that “given the income of both parties and the amount of time both parties have with the children, neither party shall pay child support beginning October 6, 2004, and that this is in the best interest of the children.”  The trial court made extensive findings regarding the income of Hui Chuan, the expenses paid by James on behalf of the children, and James’ income and monthly expenses.  In determining whether a departure from the standard child support guidelines would be appropriate, the trial court may consider the ability of the parents to contribute to the support of the children. 
Id.
 § 154.123(b)(2).  When determining the amount of monthly child support, the trial court found that Hui Chuan’s net available resources equaled an average amount of $13,000 per month, including child support she received amounting to $1,800, while James testified that he does not have current income other than a brokerage account funded with the proceeds from the sale of property awarded to him in the divorce.

The trial court also found that the possession schedule for James comes close to him having possession of the children for fifty percent of the year.  The trial court is permitted to consider the amount of time of possession of and access to the children in determining whether application of the standard child support guidelines would be unjust or inappropriate under the circumstances.  
Id. 
§ 154.123(b)(4).

Hui Chuan asserts that, in light of the fact that James listed his expenses to include $6,000 in attorney’s fees and approximately $2,700 a month for driving a Porsche, James has not presented sufficient evidence to overcome the rebuttable presumption that the standard child support guidelines should have been instituted.  However, when the trial court is making a determination regarding child support, it is given the authority to consider many factors, as the court did here.

Finally, Hui Chuan asserts that the trial court should have found that James was intentionally unemployed or underemployed.  In determining the proper amount of child support a court may consider the amount of the obligee’s net resources, including the earning potential of the obligee if the actual income of the obligee is significantly less than what the obligee could earn because the obligee is intentionally unemployed or underemployed.  
Id.
 § 154.123(b)(5).  If a parent’s actual income is significantly less than what he could earn because of intentional unemployment or underemployment, the court may apply the child support guidelines to his earning potential.  
Id.
 § 154.066 (Vernon Supp. 2002).  For a trial court to find that a parent is intentionally underemployed, there must be evidence that the parent reduced his income for the purpose of decreasing his child support obligation.  
P.J.H.
, 25 S.W.3d at 405-06.  There is no presumption of intentional underemployment simply because the divorced obligor earns less than he did when he was married to the obligee.  
Id.

At the second trial, James testified that he is self-employed.  He further testified that he was not deliberately underemploying or unemploying himself. Hui Chuan did not present any evidence to the contrary.  Based on a review of the record, we cannot say that the trial court abused its discretion in not determining that James was intentionally underemployed or unemployed.

In light of the relevant factors that the trial court considered in making its determination regarding James’ child support obligation, we hold that the trial court did not abuse its discretion by determining that Hui Chuan was not entitled to receive child support payments from James.  Accordingly, we overrule Hui Chuan’s fourth issue. 

CONCLUSION

Having overruled each of Hui Chuan’s four issues, we affirm the trial court’s judgment. 

DIXON W. HOLMAN

JUSTICE

PANEL B:  HOLMAN, GARDNER, and WALKER, JJ.

DELIVERED:  August 3, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4

2:
Hui Chuan asserts that the trial court does not specifically state that it found that she had committed perjury as to any specific acts, but she assumes that it was based on the alleged relationship with Riley and her alleged drinking of alcohol.  We disagree.  The trial court’s findings of fact specifically state that “[t]he Court finds that HUI CHUAN LOGAN has been seeing Peter Riley for the better part of eighteen (18) months even though HUI CHUAN LOGAN and Peter Riley have both denied this under oath.”

3: Miriam Webster’s online dictionary contains nine different definitions of the word “seeing,” including a definition stating “to keep company with especially in courtship or dating.”  
Miriam Webster’s Online Dictionary
, 
available at
 
http://www.m-w.com/dictionary/seeing.  Hui Chuan’s suggested definition in the narrow terms of sight demands a literal interpretation of the word that runs contrary to its everyday understanding and use.